

500 South Grand Avenue<br>
Suite 1450<br>
Los Angeles, CA 90071<br><br>
P: (213) 418-2390<br>
F: (213) 418-2399

September 28, 2021

Magistrate Karen L. Stevenson
U.S. District Court for the Central District of California
Edward R. Roybal Federal Building and United States Courthouse
255 East Temple Street
Los Angeles, California 90012-3332

   Re: **Reflex Media, Inc. v. Luxy Limited, Case No. 2:20-cv-00423**
      **Plaintiffs' Motion to Compel Further Discovery Responses**

Dear Judge Stevenson:

  Pursuant to the discovery conference held on September 21, 2021, Plaintiffs Reflex Media, Inc., and Clover8 Investments Pte. Ltd. (collectively ***"Reflex"***), respectfully submit this letter brief in support of their efforts to compel further responses to certain written discovery propounded on Defendant Luxy Limited (***"Luxy"***).

**Introduction**
  Luxy's document production has been extremely inadequate to date, comprising mostly screenshots of the parties' respective websites and apps, printouts of publicly available trademark applications and registrations, and thousands of pages of online website and app reviews of very doubtful provenance (these reviews were posted primarily after this lawsuit began, and many are taken from websites that appear to be affiliated with the individual who controls Luxy). (Eddington Decl. at ¶2). Luxy's failure to provide even the most basic information—including *any* financial information—contrasts starkly with its own all-inclusive discovery inquiries and repeated motions to compel. A litigant should not be allowed to play such a double game, and—for this reason and those given below—this Court should require Luxy to provide the requested information.[1] Reflex also asks for attorneys' fees and other appropriate relief, pursuant to Federal Civil Rule 37(a)(5)(A), at the Court's discretion.

**Category[2] No. 1: Reflex's Request for Luxy's Financial Data, Including International Financial Data in Particular (Ex. 2 at 18–19, ROGs 14 and 15 and at RFPs 16, 46, 47).[3]**

  Reflex's Interrogatories (***"ROGs"***) 14 and 15 and Requests for Production (***"RFPs"***) 16,

---

[1] Regarding each discovery request listed, Reflex requested that Luxy produce documents, and (with the possible ambiguous exception of Request #59, on which Reflex is seeking clarification), Luxy has not done so (Eddington Decl. at ¶3.) Additionally, Luxy stated that it might amend responses and produce more documents within two weeks' time, but it did not do so for any of the requests listed in this motion, unnecessarily delaying Reflex and this Court with its gamesmanship. (Eddington Decl. at ¶4.)

[2] The "Categories" are numbered as they were in the September 16, 2021, email sent by Reflex's counsel to the Court (Conf. Email, Schaeffer Decl. Exhibit ("***Ex.***") 1 at 12–16).

[3] The full text of every disputed request and response would take up nearly 50% of the allotted 10 pages in this letter brief, Reflex has attached every relevant request and response and issue as Ex. 2 (a compilation of all requests and responses at issue) Exs. 3–6 (the original responses) and Exs. 7–10 (the original requests).

www.sffirm.com

46, and 47 all ask for information and documents regarding Luxy's revenues and profits. Regarding the ROGs and RFPs 16 and 47, Luxy objected to producing or supplying information prior to January 1, 2016, and revenues from outside of the United States. Luxy stood on its objection that it is not required to produce its financial information on the conclusory ground that it never infringed. (Ex. 2 at 18–19.) Regarding RFP 46, Luxy objected that the request was irrelevant and not proportional to the needs of the case. (*Id.* at 19.)

At the September 21, 2021, hearing, the Court ordered Luxy to "produce the financial data from 2015 [to present] for the United States and its territories." (Sept. 21 Hearing Transcript, Schaeffer Decl., Ex. 11 at 231:4–8.) The Court then ordered briefing regarding non-US-revenue data. (Sept. 21 Order, Schaeffer Decl., Ex. 12 at 302–3, 306).)

**Reflex's Position:**

Luxy had furnished no financial information whatsoever. (Eddington Decl. at ¶6). Its stated rationale was temporal and geographic overbreadth (specifically, providing information prior to the 2016 start of the infringing activities, and providing information on non-U.S. activities). Luxy, of course, could *and should* have produced the information which it conceded was responsive, namely, U.S.-based information from 2016 onwards, but it relied on its overbreadth objection to produce nothing. Luxy should therefore, immediately, comply with this Court's order and produce U.S.-based financial information from 2016 forward. (*See* Sept. 21 Hearing Transcript, Schaeffer Decl. Ex. 11 at 231:4–7.)[4]

Reflex must point out, first, that this Court correctly held that even though Reflex may recover for Luxy's infringement since 2016, Reflex is entitled to financial data from the previous year to establish a pre-infringement 'baseline.' (*See* Sept. 21 Order, Schaeffer Decl., Ex. 12 at 306.)

And Luxy is just as wrong on the larger issue of whether it must produce financial data relating to operations outside the United States. In the first place, Lanham Act defendants can be required to produce non-U.S. data even if there is no finding of extraterritorial application in the case. As at least one court has stated, "because activities outside of the United States can give rise to an action for trademark infringement, Defendants are directed to produce contracts for foreign—as well as domestic—sales." *Theia Techs. LLC v. Theia Grp., Inc.*, No. CV 20-97, 2020 WL 6450468, at *5 (E.D. Pa. Nov. 3, 2020)); *see also Munhwa Broad. Corp. v. Create New Tech. Co.*, No. CV1404213RGKRZX, 2015 WL 12749448, at *4 (C.D. Cal. Sept. 2, 2015) (Klausner) (considering worldwide revenue in granting trademark statutory damages award).

Even if a finding of extraterritorial Lanham Act application were required, such a finding would be appropriate here. Courts have routinely found in favor of extraterritorial application of the Lanham Act. *See e.g.*, *Theia Techs. LLC*, 2020 WL 6450468, at *5 (ordering discovery regarding domestic and foreign contracts in a trademark infringement case because the Lanham Act can be applied extraterritorially). Indeed, the Supreme Court has stated, and re-iterated, that the Lanham Act applies abroad. *E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 252 (1991) (citing *Steele v. Bulova Watch Co.*, 344 U.S. 280, 285–287 (1952) ("[T]he [*Steele*] Court concluded that in light of the fact that the allegedly unlawful conduct had some effects within the United States,

---

[4] Mr. Smith—Reflex's lead counsel in this matter—has furnished the affidavit requested by the Court addressing the meritless conflict issue Luxy raised. (*See* Sept. 21 Hearing Transcript at pp. 228:21–235:7; *see also* Smith Affidavit at 309–11, Schaeffer Decl. at Exs. 12–13.)

coupled with the [Lanham] Act's "broad jurisdictional grant" and its "sweeping reach into 'all commerce which may lawfully be regulated by Congress,' " **the statute was properly interpreted as applying abroad**.") (emphasis added). As stated in 5 McCarthy on Trademarks and Unfair Competition § 29:57, "The Supreme Court's decision in the *Bulova Watch* case is a landmark which **liberally interprets the extraterritorial sweep of American trademark law**." *Id.* (emphasis added).

In the *Steele* case, the relevant business was initially in the United States but moved to Mexico and manufactured and sold watches there using a competitor's trademark (while also importing parts from the United States). *Steele*, 344 U.S. at 284–86. Some of those watches then filtered back into the United States. (*Id.* at 286.) On these facts, the Supreme Court ruled that the Lanham Act applied extraterritorially because "[Steele's] competing goods could well reflect adversely on Bulova Watch Company's **trade reputation in markets cultivated by advertising here as well as abroad**." *Id.* (emphasis added). The Court ruled that "the District Court in exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction." (*Id.* at 289.)

The Ninth Circuit has applied the principle enunciated in *Steele* with the aid of a three-part test used to decide whether extraterritorial application of the Lanham Act is appropriate:

> (1) the alleged violations ... create some effect on American foreign commerce; (2) the effect [is] sufficiently great to present a cognizable injury to the plaintiffs under the Lanham Act; and (3) the interests of and links to American foreign commerce [are] sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority.

*Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 969 (9th Cir. 2016) (quoting *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 613 (9th Cir. 2010). Regarding the first two prongs, "[a] defendant's foreign activities need not have a substantial or even significant effect on American commerce, rather, "some effect" may be sufficient." *Id.* And "plaintiffs may show "some effect" on American commerce in myriad ways" including the flow of products back into the United States, or even wholly foreign conduct which may diminish the value of the plaintiff's American trademarks. *Id.* at 970–72. Finally, "domestic economic activity [by the defendant] weighs in favor of applying the Lanham Act" extraterritorially to a defendant's conduct. *Id.* at 972 (citing *Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 503–04 (9th Cir. 1991)).

Applying this doctrine here, Luxy was founded in California in 2014 and only moved to Hong Kong three years later. (*See* Krause Interview, Schaeffer Decl., Ex. 14 at 314 (Raffael Krause, Luxy's Head of PR explained, "Luxy wasn't founded [in Hong Kong]; our company was actually founded in California in 2014. After about three years of existence the founder moved the office to Hong Kong.").) In 2015 (when Luxy was still in California), Reflex's CEO sent an email asking that Luxy stop using Reflex's trademarks, and Luxy indicated that it would cease doing so.[5] However, Luxy continued infringing and later expanded its infringement on Reflex's marks on the Apple App store and Google Play store, and even called itself SA and represented that it was offering "SA Services" on its website. (*See e.g.*, Google Play Screenshot 1–2, and Luxy PP,

---

[5] Reflex's lead counsel Mark Smith was a party to the email exchange. The underlying documents have currently been designated" Confidential" in both sides' productions, but can be provided to the Court upon request.

Schaeffer Decl., Exs. 15–17 at 317, 321, 324.)

Additionally, Luxy's co-founder and chief operating officer, Andrew (Shiran) Ma (who discussed the infringing conduct with Reflex's CEO in an email exchange in 2015), is still in the United States according to his LinkedIn and Facebook pages and is the chief executive officer of an Ohio registered business owned by Ting Yong Tang (Luxy's CEO) named Inspiration Tech, LLC. (Ma LinkedIn and Facebook pages 1–2 and Inspiration Tech Registration, Luxy Press Release, NY Post Article (mentioning Andrew Ma as co-founder), Schaeffer Decl., Exs. 18–23 at 327, 331, 335, 338–34, 348, 350.) Inspiration Tech has operated at least one dating service under Luxy's registered trademark, Mixy, and has an office in Ohio. (*See* Inspiration Tech Registration, Mixy Apple App (on left as the "seller), Mixy TM Reg., Schaeffer Decl., Exs. 21, 24, 25 at 338–34. 357, 360.)

Luxy itself still has American operations as well. Luxy also claims (for example) to operate from an Ohio office. (Luxy PowerPoint, Schaeffer Decl., Ex. 26 at 375.) On its initial launch, Luxy stated that it was the newest website from the makers of MillionaireMatch.com, which is in turn owned by a California corporation named SuccessfulMatch.com (hereinafter, "**Successful Match**"). (Vice Article, CA Sec. of State SuccessfulMatch Webpage, MillionaireMatch.com Service Agreement, Schaeffer Decl., Exs. 27–29 at 378, 384, 387.) And a Luxy online press release still contains a US contact phone number for SugarDaddyMeet.com and MillionaireMatch.com, both of which are owned and operated by Successful Match (which also uses the number). (*Compare* Luxy Press Release (416 phone number) *with* MillionaireMatch, SugarDaddyMeet, and SuccessfulMatch Contact webpages, Schaeffer Decl., Exs. 30–33 at 391, 393, 396, 398.) Thus, Luxy has deep and continuing ties to the United States and began its infringing conduct here before supposedly selecting an offshore headquarters.

Luxy also has significant foreign infringing activities, but even were they minimal, under governing law "the domestic effect of the [trademark infringer's] international activities may be of lesser importance and a lesser showing of domestic effects may be all that is needed when [a] defendant engages [in] a scheme involving domestic and foreign conduct." *Trader Joe's Co.*, at 972 (quoting *McBee v. Delica Co., Ltd.*, 417 F.3d 107, 118 (1st Cir. 2005) (internal quotation mark omitted). The foregoing facts show that this is the case, as Luxy (as shown above) is clearly engaged in domestic *and* foreign conduct, and a "lesser showing" of domestic effects is all that is needed for extraterritorial application of the Lanham Act. *Trader Joe's Co.*, at 972.

As to the effects of Luxy's actions on US commerce: Luxy's infringing ads for its apps, including "foreign app store" pages, are on the internet and *fully accessible from the U.S.* (*See* Schaeffer Decl. at ¶2.) Thus, "[Luxy's] competing goods could well reflect adversely on [Reflex's] **trade reputation in markets cultivated by advertising here as well as abroad**." *See Steele*, 344 U.S. at 286. Furthermore, Luxy's foreign sales "in a foreign country may have a sufficient effect on commerce to invoke Lanham Act jurisdiction" *See Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 503 (9th Cir. 1991). That is especially true where an American company (Reflex Media, Inc., registered in Nevada), may lose sales in a foreign jurisdiction. *Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 503 (9th Cir. 1991); *see also Winterland Concessions Co. v. Fenton*, 835 F. Supp. 529, 531 (N.D. Cal. 1993) ("The first two factors were readily met in this case. Defendants' foreign sales activities competed with and presumably decreased plaintiffs' foreign sales.") Therefore, on this criterion alone, Luxy's sales are relevant to discovery.

Moreover, Luxy and Reflex Media operate businesses which are geared toward high-net

worth individuals who can easily afford to travel to and from the United States. *See Trader Joe's Co.*, 835 F.3d at 971 quoting *McBee v. Delica Co., Ltd.*, 417 F.3d 107, 119 (1st Cir. 2005) ("One can easily imagine a variety of harms to American commerce arising from wholly foreign activities by foreign defendants. There could be harm caused by false endorsements, passing off, or product disparagement, or confusion over sponsorship affecting American commerce and causing loss of American sales."). Therefore, an American traveling or living abroad in a foreign country could easily see one of Luxy's infringing foreign advertisements, mistake it as a brand endorsed by Reflex's website, sign up for that website overseas and then continue using the service when he or she travels to and from the US. And Luxy's foreign users can use Luxy's application to interact with US users. Therefore, Luxy's effect on US commerce is substantial, and Reflex has met the first two prongs of the test for extraterritorial application of the Lanham Act.

On the third prong of that test, the Ninth Circuit looks to seven additional factors:

> [1] the degree of conflict with foreign law or policy, [2] the nationality or allegiance of the parties and the locations or principal places of business of corporations, [3] the extent to which enforcement by either state can be expected to achieve compliance, [4] the relative significance of effects on the United States as compared with those elsewhere, [5] the extent to which there is explicit purpose to harm or affect American commerce, [6] the foreseeability of such effect, and [7] the relative importance to the violations charged of conduct within the United States as compared with conduct abroad.

*Trader Joe's Co.*, 835 F.3d at 972–73.

Regarding these factors, first, "[c]ourts typically find a conflict with foreign law or policy when there is an ongoing trademark dispute or other proceeding abroad." *Trader Joe's Co.*, 835 F.3d at 973. There is no pending suit abroad regarding Reflex's marks with Luxy, so this factor weighs in favor of Reflex.

Second, where a foreign party operates a domestic business, the second factor weighs in favor of a finding of extraterritoriality. *Trader Joe's Co.*, 835 F.3d at 973. Here, Luxy has a US office, its chief operating officer reportedly lives in the United States, and Luxy was even founded and operated in the United States for approximately three years. (*See* Krause Interview, Schaeffer Decl., Ex. 14 at 314.) The second factor again leans heavily in favor of Reflex.

"The third factor requires [courts] to consider the remedy sought and the extent to which the trial court will be able to enforce its order." *Trader Joe's Co.*, 835 F.3d at 974. Luxy sells its services via its website, via Bitcoin, and through American companies Apple and Google. (Luxy Bitcoin Press Release, Luxy FAQ,[6] Schaeffer Decl., Ex. 34–35 at 400–01, 406.) In fact, Luxy claims that its sales in the U.S. are about 50% of its business. (*See* Krause Interview, Schaeffer Decl., Ex. 14 at 314.) Thus, a remedy fashioned by this Court could be enforced against Luxy against its U.S. revenue and operations.[7]

The fourth factor considers the relative significance of commercial effects. Luxy's conduct

---

[6] Luxy states, "[Luxy] App users usually pay via the App Store or Google Play directly. You can manage your subscriptions directly there. Other ways of purchase are Paypal or CCBill."

[7] Furthermore, the acceptance of money via Bitcoin and other means presents an accounting problem which Reflex should be allowed to probe to find all revenue that originates from the US.

primarily affects Reflex's US trademarks because its marks are registered here. But Reflex's trademarks are also world famous, and its brand would not only be affected in other countries, but in the United States as well. As Professor Schechter put it:

> In other words, consumers in Asia and Africa may have heard of COCA-COLA and KODAK long before any goods bearing those marks have been sold in their home markets. If an unauthorized firm were to begin selling goods bearing those marks and capitalizing on the U.S. mark owner's goodwill, that would not only cost the U.S. trademark owner sales abroad but might affect the reputation of its goods here in the United States—and, of course, that reputation is the very essence of the value of a trademark.

Roger E. Schechter, The Case for Limited Extraterritorial Reach of the Lanham Act, 37 Va. J. Int'l L. 619, 628–29 (1997) (cited in 5 McCarthy on Trademarks and Unfair Competition § 29:57 (5th ed.)). Reflex's business is itself global, with registrations of its marks in several foreign jurisdictions.

The fifth and sixth factors look at whether Luxy intended harm against Reflex, and whether that harm would foreseeably occur in the United States. Here, both these factors have already been established by the Court in Reflex's favor. Moreover, lost sales by Reflex overseas have an effect of Reflex Media, Inc., here. (Feb. 5 Order at Ex. 36 at 414 ("[I]t was foreseeable that Plaintiffs would suffer harm in the United States.").)

Finally, the seventh factor looks at the "[r]elative importance of conduct within the United States as compared to conduct abroad." *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 975 (9th Cir. 2016). The majority of Luxy's business is U.S.-based. Luxy began its infringing conduct in the United States, and after having been sent a cease-and-desist email in 2015, Luxy purportedly moved offshore. Therefore, this factor weighs in favor of Reflex.

Weighing all these factors, a finding of extraterritorial application of the Lanham Act is certainly justified here. And of course (as previously stated), the discovery sought would be appropriate even absent such a finding. *See Theia Techs. LLC*, 2020 WL 6450468, at *5 (stating that "because activities outside of the United States can give rise to an action for trademark infringement, Defendants are directed to produce contracts for foreign—as well as domestic—sales." (E.D. Pa. Nov. 3, 2020)); *see also Munhwa*, 2015 WL 12749448, at *4 (Klausner) (considering worldwide revenue in granting trademark statutory damages award).

For the foregoing reasons, Reflex respectfully asks this Court to order that Luxy be compelled to produce both its domestic and international financial information.

**Category No. 4: Whether Luxy must admit or deny that Wayback Machine captures of its own website are authentic (Ex. 2 at 19, Request for Admission ("*RFA*") 96).**

RFA 96 requests that Luxy simply admit that webpage captures of Luxy's own website are authentic renderings of its own website. (Ex. 2 at 19.) Luxy has objected based on burden. (*Id.*)

**Reflex's position:**
Rather than take up the Court's and parties' valuable time regarding webpage captures from the Wayback Machine, Luxy should just admit that the Wayback Machine is a reliable source

of copies of its website. Courts in the Ninth Circuit routinely take judicial notice of printouts from the Wayback Machine. See e.g., Brown v. Google LLC, No. 20-CV-03664-LHK, 2021 WL 949372, at *5 (N.D. Cal. Mar. 12, 2021); Metricolor LLC v. L'oreal S.A., No. 218-CV-00364-CASEX, 2020 WL 3802942, at *7 (C.D. Cal. July 7, 2020); In re Facebook, Inc. Sec. Litig., 405 F. Supp. 3d 809, 829 (N.D. Cal. 2019); Erickson v. Nebraska Machinery Co., No. 15-cv-01147-JD, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); Parziale v. HP, Inc, No. 5:19-CV-05363-EJD, 2020 WL 5798274, at *3 (N.D. Cal. Sept. 29, 2020) ("The Court finds the store page to be relevant and **inherently reliable**, and therefore takes judicial notice [of a "historical snapshot of the online store page for the printer, as archived on the Wayback Machine") (emphasis added); Under A Foot Plant, Co. v. Exterior Design, Inc., No. 6:14-cv-01371-AA, 2015 WL 1401697, at *2 (D. Or. Mar. 24, 2015) (collecting cases); Wallack v. Idexx Laboratories, Inc., No. 11-cv-2996-GPC (KSC), 2015 WL 5943844, at *16 (S.D. Cal. Oct. 13, 2015).

Courts in the Ninth Circuit have even taken judicial notice of content from the Wayback Machine *sua sponte*. United States ex rel. Hong v. Newport Sensors, Inc., No. SACV131164JLSJPRX, 2016 WL 8929246, at *3 (C.D. Cal. May 19, 2016), aff'd sub nom. United States ex rel. Juan Hong v. Newport Sensors, Inc., 713 F. App'x 724 (9th Cir. 2018), and aff'd sub nom. United States ex rel. Hong v. Newport Sensors, Inc., 728 F. App'x 660 (9th Cir. 2018) ("A court "may take judicial notice on its own," Fed. R. Evid. 201(c)(1), and district courts in this circuit have routinely taken judicial notice of content from the Internet Archive's Wayback Machine pursuant to this rule, as we do here."); Calvary Chapel of Ukiah v. Newsom, No. 220CV01431KJMDMC, 2021 WL 916213, at *5 (E.D. Cal. Mar. 10, 2021) ("In order to confirm past versions of government orders, the court utilized an internet archive resource available at: http://web.archive.org/[...]"). From this multitude of cases, it is obvious that courts have routinely recognized that the Wayback Machine creates reliable copies of webpages as they appear on a particular day.

Luxy could, of course, have contested the reliability of specific screenshots, but has not done so. Luxy could likewise have reserved its right to contest specific Wayback Machine captures should it have a basis for doing so but declined to do that either. Luxy's position is therefore one of complete refusal to acknowledge the reliability of Wayback Machine captures even on a general basis, and this position is completely untenable given the cited case law and the fact that *Luxy has produced numerous Wayback Machine documents of its own in this case*. Reflex should not have to go the trouble, at summary judgment or trial, to prove that the Wayback Machine is reliable, and Luxy should be required to admit the same.

Finally, the burden of admitting that Wayback Machine captures is not a page-by-page analysis as Luxy purports; rather, Luxy need only admit that the Wayback Machine effectively captures information, including Luxy's information. See Parziale, 2020 WL 5798274, at *3. Therefore, continuing to refuse this admission is merely an attempt to drive up litigation costs and inefficiencies, which should not be tolerated.

**Category No. 5: Whether Luxy must answer questions regarding its infringement of other companies' intellectual property (Ex. 2 at 20–21, RFAs 12, 18, 19, 20, 145, 148, 149, 150).**

RFAs 12, 18, 19, 20, 145. 148, 149, and 150 all simply ask Luxy to admit that it has used other companies' trademarks and that it did not have permission to do so. Luxy has objected based on relevance and burden associated with searching its own website and marketing materials (even though Reflex has produced much of its own such materials to Luxy).

**Reflex's position:**

RFAs 12, 18, 19, 20, 21, 145, 148, 149, and 150 all seek information about Luxy's pattern and practice of infringing on its competitors' trademarks to show intent and willfulness. These questions are obviously relevant, as many courts have considered an intellectual property defendant's pattern of infringement in assessing culpability. *See e.g.*, *Atari Interactive, Inc. v. RageOn, Inc.*, No. CV1910806DSFMAAX, 2020 WL 10501843, at *4–5 (C.D. Cal. Apr. 2, 2020), *vacated on other grounds,* No. CV1910806DSFMAAX, 2020 WL 5802376 (C.D. Cal. Aug. 25, 2020) (on other grounds) (taking into account allegations, taken as true, of "[Defendant's] pattern and practice of infringing upon the intellectual property rights of well-known brands" in finding willfulness by the defendant); *Lahoti v. Vericheck, Inc.*, 708 F. Supp. 2d 1150, 1170 (W.D. Wash. 2010), aff'd, 636 F.3d 501 (9th Cir. 2011) (considering the defendant's "pattern and practice of registering domain names that incorporate the trademarks of others" in accessing bad faith and knowing acts); *Elec. Boutique Holdings Corp. v. Zuccarini,* 56 U.S.P.Q.2d 1705, 1710 n. 11, 1713–14 (E.D.Pa. 2000) (awarding $100,000 statutory damages per domain name with $27,487 attorneys' fees against "notorious cybersquatter" who "thumbs his nose at the rulings of this court and the laws of our country"); *Kohler Co. v. Domainjet, Inc.*, No. 11-CV-1767 BEN (KSC), 2012 WL 12868267, at *4 (S.D. Cal. Dec. 11, 2012) ("Finally, they allege facts evidencing bad faith intent, such as Defendants' registration of multiple domain names that are confusingly similar to distinctive marks of third parties. Taken as true, such allegations suffice.")

Luxy cannot, therefore, evade discovery on its infringement of other parties' intellectual property. The Court should bear in mind that Reflex is not even asking for document production on this issue here, but *merely asking Luxy to admit that it used other parties' intellectual property in the manner described.* Luxy has no basis for refusing to admit (as it evidently cannot deny) what Reflex has proof that it did (Reflex has produced documents regarding its use of other companies' trademarks). Should Luxy wish to argue at a later date that its use of other companies' trademarks is legal, it should do so. Luxy, however, should not be allowed to evade relevant questions entirely, and Reflex therefore asks the Court to rule in its favor on this issue.

**Category No. 7: Whether Luxy must admit or deny whether it has copied specific, identified material (Ex. 2 at 21–22, RFA 76).**

**REQUEST FOR ADMISSION NO. 76:**
Admit that YOU copied content from MillionaireMatch.com and used it on the LUXY WEBSITE.
**RESPONSE:** Luxy objects to this Request on the ground that it seeks information—namely, whether Luxy "copied content" from the MillionaireMatch.com website—that is not relevant to any claim or defense asserted in this action.

**Reflex's position:**

The Court stated that Luxy must demonstrate the actual burden associated with responding to this question. (Sept. 21 Order, Schaeffer Decl., Ex. 12 at 307.) Luxy did not object based on burden, but rather, only on relevance. In any event, Luxy has tried to preserve its objection to this Court's exercise of personal jurisdiction over it (Luxy's Answer, Ex. 37 at 428:21–22 ). Therefore,

evidence regarding the relationship and control exerted by a California company—namely, Successful Match (which owns MillionaireMatch.com)—over Luxy is relevant, especially because the same man (Jason Du) is the majority owner of both Successful Match and Luxy. (*See* CA Sec. of State SuccessfulMatch Webpage, Jason Qiang Du LinkedIn, Du Article, Luxy Ownership (showing Jason Qiang Du owns 51% of Luxy Limited), Schaffer Decl., Ex. at 28 at 384, Exs. 38–40 at 461, 464, 500.) Additionally, even if there was no relationship, deliberate copying from others' websites would show a pattern and practice of Luxy's infringement and would be relevant for demonstrating Luxy's culpability and intent. *See e.g.*, *Atari Interactive*, 2020 WL 10501843, at *4–5.

Moreover, Luxy cannot show any serious burden in answering this request because it can simply compare historical copies of its website with the MillionaireMatch.com website on the Wayback Machine, a tool that Luxy has used countless times in the course of this case. For example, Luxy itself states that it was launched in 2014, and Reflex has therefore attached a Wayback capture of MillionaireMatch.com from the end of 2013, stating "Our members include CEOs, pro athletes, doctors, lawyers, investors, entrepreneurs, beauty queens, fitness models and Hollywood celebrities, just to name a few." (MM 2013 Screenshot, Schaeffer Decl., Exs. 41 at 503.) A September 25, 2014, capture of Luxy's website states, "Our members include CEOs, entrepreneurs, investors, millionaires, beauty queens, fitness models, Hollywood celebrities, pro athletes, doctors, lawyes [sic] and successful people, juast [sic] name a few." (Luxy 2014 Screenshot, Schaeffer Decl., Ex. 42 at 505.)

Luxy has obviously copied and will not be burdened by admitting it. On this issue as well, Reflex requests that the Court rule in its favor.

**Category 10: Whether Luxy must produce studies or surveys relating to Luxy's platforms and the products and services offered on those platforms (Ex. 2 at p. 22, RFP 59).**

RFP 59 asks Luxy to produce documents regarding studies, tests, ratings or surveys regarding its products and services. (Ex. 2 at 22.) Luxy only objects based on burden, stating that it will produce documents subject to its objections. Luxy does not, however, clearly state what is being withheld based on its objections. (*Id.*)

**Reflex's position:**
Luxy does not specifically object that the requested tests, studies, ratings or surveys are not relevant, nor has Luxy provided a declaration or any other evidence to show exactly why this request is overburdensome. (Eddington Decl. at ¶ 5.) It is surely not more difficult than producing the thousands of pages of purported website reviews or publicly available trademark applications that Luxy has produced. Luxy has not substantiated its burden objection, even though it implicitly admits that such a request is relevant. *Rutherford v. Palo Verde Health Care Dist.*, No. ED CV13-01247 JAK (SPx), 2014 WL 12637904, at *5 (C.D. Cal. Dec. 11, 2014) ("The evidence submitted is a single declaration; it states only that the search needed to respond to the request 'could' take hundreds of hours, and could take a year to complete."); *Reardon v. Progressive Nw. Ins. Co.*, No. C10-225RSL, 2010 WL 11566247, at *2 (W.D. Wash. Sept. 28, 2010) ("[N]either [declarant] provides particular or specific facts in support of its conclusory contention that responding to the

requests would be unduly burdensome.")[8]. Furthermore, Luxy must state what documents it is withholding based on each objection, and Luxy has not done that here. Fed. R. Civ. P. 34(b)(2)(C); *Daniels v. G4S Secure Sols.* USA, Inc., No. 820CV00283JGBJDEX, 2021 WL 1537040, at *11 (C.D. Cal. Jan. 21, 2021) (M.J. Early) (stating the defendant had not complied with Rule 34(b)(2)(C) because he did not state which documents were being withheld based on objections).

Luxy, in short, should state clearly whether and to what extent it has withheld responsive documents based on its objections, and should state why the requested production would be unduly burdensome.

**Category 11: Whether Luxy must provide documents relating to any instance of sugar dating on its platforms, including documents relating to Luxy's actions or reactions to such instances (Ex. 2 at p. 22, RFP 71).**

RFP 71 asks Luxy to produce all documents regarding any instance of sugar dating on its website and its response and actions regarding the same. (Ex. 2 at 22.) Luxy only objects based on burden and states that it will only produce representative examples. (*Id.*)

**Reflex's position:**
Reflex raised this issue because Luxy (whether plausibly or not) has argued that it is not a competitor with Reflex. For example, at the August 19, 2021, hearing in front of this Court, Luxy's counsel stated that this issue goes to whether the litigants are direct competitors. (August 4th Hearing Transcript, Ex. 43 at 535:11–536:15.) Even though Luxy has argued that it is not, for example a "sugar dating" app, it has several ads that say differently. (*See id.*; see *e.g.,* Google Play Screenshot 1–2, Schaeffer Decl., Exs. 15–16 at 317, 320.) Reflex is obviously entitled to documents that could challenge and disprove Luxy's contention that it is not a direct competitor with Reflex.

And if Luxy is right—and it is not a sugar dating app—then there should be little or no evidence to that effect and Luxy will not be burdened by a response. But Luxy certainly should not be able to cherry pick a few documents that (purportedly) show that it *doesn't* allow sugar dating, and simply exclude the rest that will show, as Reflex's examples exhibited here, that it is an active participant in the "sugar dating" space. Luxy also has not substantiated its burden objection in this case. *See Reardon*, 2010 WL 11566247, at *2. Therefore, Luxy should be required to produce the requested documents.

Respectfully,

/s/ Mark L. Smith

---

[8] Both the *Rutherford* and *Reardon* were cited by Luxy in its First Motion to Compel. (ECF No. 85-1 at 17:16–23.) Luxy is aware that if it does not assert relevance objections that it must substantiate its burden objection. (*See id.*)