# Exhibit 3

Exhibit 3
Page 023

Kollin J. Zimmermann (State Bar No. 273092)
KZimmermann@kilpatricktownsend.com
Camden A. Minervino (State Bar No. 328361)
CMinervino@kilpatricktownsend.com
Beatrice O'Neil Strnad (State Bar No. 327791)
bstrnad@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
1801 Century Park East, Suite 2300
Los Angeles, CA  90067
Telephone:  310-248-3830
Facsimile:   310-860-0363

Attorneys for Defendant and Counterclaimant
LUXY  LIMITED

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| REFLEX MEDIA, INC., a Nevada corporation; and CLOVER8 INVESTMENTS PTE., LTD, a Singapore corporation, <br><br> Plaintiffs, <br><br> v. <br><br> LUXY LIMITED, a Chinese corporation, <br><br> Defendant. | Case No. 2:20-cv-00423-RGK(KSx) <br><br> **DEFENDANT LUXY LIMITED'S RESPONSE TO PLAINTIFF REFLEX MEDIA'S FIRST SET OF INTERROGATORIES** <br><br> Complaint:  January 19, 2021 <br> Judge:       Hon. R. Gary Klausner |
| LUXY LIMITED, a Hong Kong corporation, <br><br> Counterclaimant, <br><br> v. <br><br> CLOVER8 INVESTMENTS PTE., LTD, a Singapore corporation, <br><br> Counter-defendant. | |

Exhibit 3
Page 024

1

1  **PROPOUNDING PARTY:**      **Plaintiff, Reflex Media, Inc.**

2  **RESPONDING PARTY:**      **Defendant, Luxy Limited**

3  **SET NO.:**      **ONE**

4       Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure,

5  Defendant Luxy Limited. ("Luxy") hereby responds to the "First Set of

6  Interrogatories" (the "Interrogatories") served by Plaintiff Reflex Media, Inc.

7  ("Reflex" or "Plaintiff") as follows:

8  **PRELIMINARY STATEMENT**

9       The following responses and objections are based on Luxy's present

10  knowledge after a reasonable investigation. Luxy's investigation is continuing.

11  That Luxy identifies responsive information does not constitute an admission or

12  acknowledgment that the Interrogatory is proper, that the requested information

13  exists in the possession, custody, or control of Luxy, that the information sought is

14  within the proper bounds of discovery, is relevant or material, or that requests for

15  similar information will be treated in similar fashion. In addition, any and all

16  responses to the Interrogatories are for the purposes of this action only and are not

17  responses for any other purpose, nor may they be used in any other proceeding.

18  **GENERAL OBJECTIONS**

19       1.      Luxy objects to each Interrogatory to the extent that it requires

20  disclosure of information protected by the attorney-client privilege, the work

21  product doctrine, Luxy's right to privacy, and/or any other applicable privilege or

22  protection.

23       2.      Luxy objects to each Interrogatory that is not limited to a time period

24  relevant to this action as it would be overbroad, unduly burdensome, and not

25  proportional to the needs of the case. Luxy's responses and investigation will be

26  limited to January 1, 2016 to the present.

27

28

3.       Luxy objects to each Interrogatory to the extent it requires Luxy to do anything other than conduct a reasonably diligent search.

4.       Luxy objects to each Interrogatory to the extent it contains inappropriate express and/or implicit characterizations.  The fact that Luxy provides a response to an Interrogatory does not mean that Luxy adopts, admits, or otherwise agrees whatsoever with any such characterizations.

5.       Luxy objects to each Interrogatory to the extent it seeks information regarding conduct outside the United States, which is not relevant to this case. Luxy's responses will be limited to the United States.

6.       Luxy has not completed its investigation into the subject matter of this action or the underlying facts or evidence.  Luxy's responses are therefore made to the best of Luxy's current knowledge, information, and belief after good faith investigation of sources reasonably available to it.  Luxy reserves the right to conduct additional investigation and discovery, to rely on additional facts, information, documents, or materials, and to supplement its responses to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Central District of California.

7.       The foregoing General Objections apply to each Interrogatory and are hereby specifically incorporated into each response to each such Interrogatory. Any failure to repeat all or any part of such General Objection in any specific response shall not constitute a waiver or other relinquishment of such objection.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.       Luxy objects to each Definition, Instruction, and Interrogatory to the extent that it imposes obligations on Luxy beyond what is required under the Local Rules, the Federal Rules of Civil Procedure, or any other applicable law.

2.       Luxy objects to the definition of "DOCUMENT" to the extent it

purports to require Luxy to search certain repositories, like "text messages" and "diaries," on the ground that it seeks to impose undue burden and expense on Luxy.  Luxy's searches will be limited to reasonably accessible repositories that are most likely to contain responsive documents.

3.      Luxy objects to the definition of "COMMUNICATIONS" to the extent it purports to require Luxy to search certain repositories, like "diaries" and "daily calendars." Luxy's searches will be limited to reasonably accessible repositories that are most likely to contain responsive documents.

4.      Luxy objects to Instructions 28 and 29 to the extent they seek to impose obligations on Luxy beyond what is required by Federal Rule of Civil Procedure 33 or the Local Rules.

## RESPONSES TO REQUESTS

## INTERROGATORY NO. 1:

Identify the owners (including beneficial owners) of LUXY from its inception to present, including the dates on which each PERSON acquired an ownership interest and the amount of their ownership interest.

## RESPONSE:

Luxy objects to this Interrogatory on the ground that the information it seeks is not relevant to any claim or defense asserted in this case. The identities of every "owner" of Luxy "from its inception to present" are not relevant, nor are the dates each such person "acquired an ownership interest" nor the amount of ownership interest.  The term "beneficial owners" is also vague and ambiguous.

## INTERROGATORY NO. 2:

Identify all individuals who are or have been officers or directors of Luxy— including but not limited to those who have served as Chief Executive Officer or an equivalent position—since January 1, 2014.

Exhibit 3
Page 027

4

**RESPONSE:**

Luxy objects to this Interrogatory on the ground that it seeks information that is not relevant to any claim or defense asserted in this case, namely, the identities of every officer or director of Luxy from January 1, 2014 to present.

In accordance with this objection, Luxy states as follows:

Ting Yong Tang

**INTERROGATORY NO. 3:**

Describe, in detail, the circumstances through which YOU first became aware of REFLEX, including any of the REFLEX PLATFORMS or TRADEMARKS.

**RESPONSE:**

Luxy objects that determining when a company "first became aware" of something is a difficult and ambiguous task, given the state of mind of current and past employees of the company is nearly impossible to determine.  But after a reasonable investigation, Luxy believes it first became aware of the Seeking Arrangement service on or around June-September 2015 when Brandon Wade emailed Luxy ostensibly about alleged use of Plaintiffs' purported trademarks and stated, "I am interested in purchasing Luxy, and am wondering if you would consider selling the business."

**INTERROGATORY NO. 4:**

Identify and describe in detail each instance in which YOU have used or caused to be used all or any portion of material (such as text, legal agreements, trademarks, designs, or images) copied or otherwise taken from one or more of the REFLEX PLATFORMS (including any copying that is in any terms of service or privacy policy). Each identification and description of use should include the following: a description of each instance of copying, the date that the copying occurred, the identity of PERSONS directly and/or indirectly involved and their

relationship to YOU (such as employment or contractor status), the duration of such use of the material copied (including the first and last date of use), the first date that YOU became aware of the source material copied, the date that YOU decided to copy material, the location that YOU caused the copied material to be used (including webpage URL, or Application Store (such as the Apple App Store or Google Play Store) location), details regarding publication, and YOUR reasoning and intent concerning the copying and use of the copied material.

**RESPONSE:**

Luxy objects to this Interrogatory on the ground that it contains multiple discrete subparts. Although purportedly seeking only a description of instances in which Luxy has used unspecified materials from the REFLEX PLATFORMS, the Interrogatory asserts at least the following primary questions: (1) a factual description of each alleged instance of copying, including certain dates; (2) identification of the persons involved "directly or indirectly," and their relationships to Luxy; (3) the date Luxy became aware of the material; (4) the date Luxy purportedly decided to copy the material; (5) details regarding "publication," a term of art under the Copyright Act; and (6) an explanation of Luxy's "reasoning and intent." *See Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 218 (C.D. Cal. 2009) ("Interrogatory no. 1 still has at least three discrete subparts: facts; persons; and documents."); *see also Mailhoit v. Home Depot U.S.A., Inc.*, 2012 WL 12883970, at *4 (C.D. Cal. Sept. 5, 2012) ("[S]pecific questions about the dates the individuals participated in the DMAC, the store the individuals managed at the time of selection, and each individual's Performance Rating at the time of selection are 'independent' of the primary question regarding who attended the DMAC and must be counted separately").

In addition, the Second Amended Complaint alleges two discrete instances of copying, of (1) Reflex's terms of use and (2) Reflex's privacy policy. Thus,

Interrogatory 4 is a prime example of gamesmanship intended to avoid Rule 33's limit on the number of interrogatories that may be served—essentially demanding testimony in 6 discrete categories for each of 2 discrete instances of purported copyright infringement.  This Interrogatory must therefore be counted as 12 interrogatories.

Luxy further objects to Interrogatory 4 and its subparts to the extent it seeks identification of those "indirectly involved" in purported copying, as that phrase is so vague and ambiguous that Luxy is unable to reasonably ascertain the information sought.

In accordance with these objections, Luxy responds to Interrogatory 4 and its subparts as follows:

4.1    <u>Factual description regarding the Reflex terms of use, including material dates</u>. Luxy did not copy Reflex's terms of use.  Luxy outsources many tasks to third-party contractor companies/people, and the creation of the terms of use at issue was done by one such third-party contractor.  Luxy did not instruct this third-party contractor to copy Reflex's terms of use.  After a reasonable investigation, Luxy is informed and believes that the terms of use at issue were created around June 2018.  That version was in use until approximately January 20, 2020, when that version was replaced with a new, substantially dissimilar version on January 21, 2020, which has been in use since, subject to minor revisions.

4.2    <u>Identification of persons involved in terms of use</u>.  The third-party contractor that created the terms of use at issue is Ins Co., Ltd.

4.3    <u>The first date Luxy became aware of Reflex's terms of use</u>. Luxy first became aware of Reflex's terms of use on or around January 18, 2020, as a result of Reflex filing this lawsuit.

4.4     <u>The date Luxy allegedly decided to copy the terms of use</u>.  Luxy did not copy Reflex's terms of use, nor did it instruct the third-party contractor to do so, so there was never a "decision" to do so.

4.5     <u>Details regarding publication of the terms of use</u>. The version of the terms of use at issue was available on Luxy's website and mobile app.

4.6     <u>Luxy's "reasoning and intent" regarding the terms of use</u>. Luxy did not copy Reflex's terms of use, nor did it instruct the third-party contractor to do so.  The General Data Protection Regulation ("GDPR") came into full effect in May 2018, and Luxy was unsure whether its terms of use were satisfactory under that regulation. Accordingly, Luxy asked the third-party contractor to update Luxy's terms of use to ensure compliance with the GDPR.

4.7     <u>Factual description regarding the Reflex privacy policy, including material dates</u>. Luxy did not copy Reflex's privacy policy.  Luxy outsources many tasks to third-party contractor companies/people, and the creation of the privacy policy at issue was done by one such third-party contractor.  Luxy did not instruct this third-party contractor to copy Reflex's privacy policy.  After a reasonable investigation, Luxy is informed and believes that the privacy policy at issue was created around June 2018.  Luxy is further informed and believes that the third-party contractor used Reflex's privacy policy as a reference and, prior to publishing Luxy's privacy policy, attempted to remove all references to Reflex and Reflex's website, products, and services.  Unfortunately, Luxy is further informed and believes that due to an oversight, the terms "SA" and "SA Services" each appeared once in the three-page privacy policy, which is otherwise clearly labeled as coming from Luxy throughout.  That version was in use until approximately January 20, 2020, when that version was replaced with a new, substantially dissimilar version on January 21, 2020, which has been in use since, subject to minor revisions

4.8.    <u>Identification of persons involved in privacy policy</u>. The third-party contractor that created the privacy policy at issue is Ins Co., Ltd.

4.9    <u>The first date Luxy became aware of Reflex's privacy policy</u>. Luxy first became aware of Reflex's privacy policy on or around January 18, 2020, as a result of Reflex filing this lawsuit.

4.10.  <u>The date Luxy allegedly decided to copy the privacy policy</u>.  Luxy did not copy Reflex's privacy policy, nor did it instruct the third-party contractor to do so, so there was never a "decision" to do so.

4.11   <u>Details regarding publication of the privacy policy</u>. The version of the privacy policy at issue was available on Luxy's website and mobile app.

4.12   <u>Luxy's "reasoning and intent" regarding the privacy policy</u>. Luxy did not copy Reflex's privacy policy, nor did it instruct the third-party contractor to do so.  The General Data Protection Regulation ("GDPR") came into full effect in May 2018, and Luxy was unsure whether its privacy policy was satisfactory under that regulation. Accordingly, Luxy asked the third-party contractor to update Luxy's privacy policy to ensure compliance with the GDPR.

**<u>INTERROGATORY NO. 5:</u>**

Identify and describe in detail each instance in which YOU have used, or caused to be used, all or any portion of phrases contained in the TRADEMARKS (including any non-genuine copy of such phrases). Each identification and description of use should include the duration of such use (including the first and last date of use), the location (including webpage URL, location in metadata, or in any application store (such as the Apple App Store or Google Play Store)), and YOUR reasoning and intent for the use of any phrases (or non-genuine copy of phrases) contained in the TRADEMARKS, the identity of all PERSONS directly and/or indirectly responsible for each instance identified and their relationship to YOU (such as employment or contractor status).

**RESPONSE:**

Luxy also objects to this Interrogatory on the ground that it contains multiple subparts. First, the Interrogatory seeks information in three discrete categories: (1) a factual description of each instance of purported trademark infringement; (2) identification of the persons involved "directly or indirectly," and their relationships to Luxy; and (3) an explanation of Luxy's "reasoning and intent." To answer Interrogatory 5, Luxy would be required to provide testimony in those three discrete categories as to each discrete instance of purportedly infringing conduct alleged in the Second Amended Complaint. In addition, Interrogatory 5 purports to include other instances of purported use of Plaintiffs' trademarks—including "portions" of those marks, which are not relevant to any claim or defense asserted in this case and would impose an undue burden and expense on Luxy. Thus, Interrogatory 5 is improperly compound.

Luxy further objects to Interrogatory 5 and its subparts to the extent it seeks identification of those "indirectly responsible" for each instance identified, as that phrase is so vague and ambiguous that Luxy is unable to reasonably ascertain the information sought.

In accordance with these objections, Luxy responds to Interrogatory 5 and its subparts as follows:

5.1    Description of use of "seeking millionaire" as meta keyword.

Luxy did not add the generic phrase "seeking millionaire" as a meta keyword on its website.  Luxy outsources many tasks to third-party contractor companies/people, and the creation of its website, which included creating the meta keywords, was done by one such third-party contractor.  Luxy did not discuss with the third-party contractor which meta keywords to use, nor did it instruct the third-party contractor to include the generic phrase "seeking millionaire" as a meta keyword.  After a reasonable investigation, Luxy is informed and believes that the

generic phrase "seeking millionaire" was included as a meta keyword on the home page of its website from approximately October 2014 until around September 2017, when Luxy removed it believing that was the only place it was used.  Shortly after Plaintiffs brought this issue to Luxy's attention by filing this lawsuit in January 2020, Luxy conducted a further investigation and determined the generic phrase "seeking millionaire" was also used as a meta keyword on other sub-pages of its website, so Luxy removed it from there as well.

     5.2   <u>Identification of persons involved in use of "seeking millionaire" as meta keyword.</u>  The third-party contractor that included the generic phrase "seeking millionaire" as a meta keyword on Luxy's website is Nate Chen.

     5.3   <u>Alleged "reasoning and intent" regarding use of "seeking millionaire" meta keyword.</u>  Luxy did not add the generic phrase "seeking millionaire" as a meta keyword to its website, nor did it instruct the third-party contractor to do so. Luxy does not know the third-party contractor's "reasoning and intent" in selecting the meta keywords, but Luxy is informed and believes that the third-party contractor did not know the generic phrase "seeking millionaire" was a purported trademark, and was merely using the generic phrase to accurately describe Luxy's website, as many of the potential users of Luxy's services are, quite literally, "seeking millionaire."

     5.4   <u>Description of potential use of "seeking" or "seeking arrangement" on Apple App Store.</u>  Luxy did not itself use the generic terms "seeking" or "seeking arrangement" in connection with marketing its mobile app on the Apple App Store. Luxy outsources many tasks to third-party contractor companies/people, and the marketing of its mobile app on the Apple App Store has been done by at least one such third-party contractor.  Luxy is informed and believes that some of this work may have been subcontracted to third-party subcontractors as well.  Luxy did not instruct the any of the third-party contractors or subcontractors to use the generic

terms "seeking" or "seeking arrangement" in connection with the marketing of

Luxy's app on the Apple App Store.  After a reasonable investigation, Luxy has

been unable to determine whether, when, and/or in what manner such use occurred,

if it occurred at all.  Luxy is continuing its investigation and will supplement this

response as additional information becomes available.

     5.5   <u>Identification of persons involved in potential use of "seeking" or</u>

<u>"seeking arrangement" on Apple App Store.</u>  The third-party contractors and/or

subcontractors referenced above are WoCreate Technology Co., Ltd.; Innovation

Co., Ltd.; Future Co., Ltd.; and Beijing Lbadvisor Technology Co., Ltd.

     5.6   <u>Alleged "reasoning and intent" regarding potential use of "seeking" or</u>

<u>"seeking arrangement" on Apple App Store.</u>  Luxy did not itself use the generic

terms "seeking" or "seeking arrangement" in connection with marketing its mobile

app on the Apple App Store, nor did it instruct any third-party contractor or

subcontractor to do so.  Luxy is not certain whether, when, and/or in what manner

such use occurred, if it occurred at all, so Luxy cannot speculate on the "reasoning

and intent" behind such potential use.  Luxy is continuing its investigation and will

supplement this response as additional information becomes available.

**INTERROGATORY NO. 6:**

     Identify all revenue generated from any use of any non-genuine copy of, or

phrases contained in the TRADEMARKS, and identify and describe each

DOCUMENT and COMMUNICATION regarding such profits and an explanation

of how such profits were calculated.

**RESPONSE:**

     Luxy objects to this Interrogatory on the ground that it contains four discrete

subparts: (1) identification of "all revenue"; (2) identification of documents and

communications regarding "profits"; (3) description of such documents and

communications; and (4) explanation of "profits" and how they were calculated.

Exhibit 3
Page 035

12

Luxy further objects to this Interrogatory to the extent it concerns "any use" of "phrases contained in the TRADEMARKS"—which would include every use in every context of, e.g., the generic words "carrot," "dating," "arrangement," and "millionaire"—on the ground that it seeks irrelevant information, would impose an undue burden and expense on Luxy, and is not proportional to the needs of the case. Luxy further objects to this Interrogatory to the extent it seeks information from prior to January 1, 2016, which is not relevant to any claim or defense asserted in this action. Luxy also objects to this Interrogatory to the extent it seeks information concerning revenues from outside the United States, which is not relevant.

In accordance with the foregoing objections, Luxy responds as follows:

Luxy generates revenue and profits primarily through user purchases/subscriptions to its clearly labeled Luxy service.  Luxy has not generated any revenue or profits from its alleged use of any of Plaintiffs' purported trademarks.

**INTERROGATORY NO. 7:**

Describe every instance in which any PERSON has been in any way confused, mistaken, or deceived as to the origin or sponsorship of any goods or services sold, provided, or offered for sale by YOU. In describing every such instance, include the date, the names of the people involved, and the context surrounding each instance.

**RESPONSE:**

Luxy denies that any actionable consumer confusion has occurred, but for purposes of responding to this very broad Interrogatory, pursuant to Rule 33(d), Luxy will conduct a reasonable search and produce documents responsive to this Interrogatory.

**INTERROGATORY NO. 8:**

Describe YOUR target market for the LUXY PLATFORMS, including age-range, gender distribution, geographic location, and any other demographics or behavioral attributions used by YOU to identify YOUR target market, including those members who are "vouched in" to LUXY.

**RESPONSE:**

Luxy's target market in the United States is sophisticated, elite, single, adults, who have executive jobs, own their own business, or are exceptional in their career, many of which earn at least $200,000 or more per year, who are seeking an equally sophisticated, elite, and successful match to be in a serious relationship with.

Luxy is not for users who just want to get a free ride on a certain lifestyle (i.e., sugar babies) by seeking arrangements with wealthy individuals (i.e., sugar daddies).

**INTERROGATORY NO. 9:**

Identify and describe in detail your efforts to remove or prevent the use of your goods or services by any "sugar daters" from the LUXY platforms, including YOUR policy, if you have one, and all instances in which you have received a complaint regarding sugar dating on the LUXY PLATFORMS and the course of action taken by YOU.

**RESPONSE:**

Luxy objects to this Interrogatory on the ground that it contains at least three discrete subparts: (1) a description of Luxy's efforts to remove "sugar daters"; (2) Luxy's "policy" on sugar dating; and (3) identification of "all instances" in which Luxy has received a complaint regarding sugar dating. Interrogatory 8 must therefore be counted as at least three interrogatories. Luxy further objects to this Interrogatory on the ground that a description of "all instances" in which Luxy has

"received a complaint regarding sugar dating" and Luxy's resulting "course of action taken" as to all such instances would impose an undue burden and expense on Luxy and is disproportional to the needs of the case.

In accordance with these objections, Luxy responds as follows:

Since its inception, Luxy's user guidelines have prohibited the use of its services for sugar dating. What makes Luxy unique, other than the high quality of its products, services, and users, is the fact that it facilitates dating between sophisticated, elite users who each have a professional career and their own superb financial records. Luxy is not for users who just want to get a free ride on a certain lifestyle (i.e., sugar babies) by seeking arrangements with wealthy individuals (i.e., sugar daddies). Luxy allows users to verify their incomes by submitting government-issued identification and copies of relevant tax returns. Luxy also makes clear on the homepage of its website, the app page in the Apple App Store, and the app page in the Google Play Store that sugar dating is prohibited. In addition, Luxy's terms of use prohibit conduct that violates any "code of ethics" or "good citizen behavior," which includes, but is "not limited to," "escorting" and "prostitution." Luxy's terms also prohibit "[m]isusing the platform for affair dating, adultery, cheating, swinging and any other kinds of sexual-related purposes or non-genuine dating and connecting." Luxy analyzes new users to ensure they are not looking for sugar dating, and only 10-15% of new users are accepted. Users who suspect potential sugar daters may submit complaints to Luxy. Pursuant to Rule 33(d), Luxy will also produce documents evidencing its enforcement of its policy prohibiting sugar dating.

**INTERROGATORY NO. 10:**

Identify every PERSON known to YOU to have, at any time, been a member of any of the REFLEX PLATFORMS who used or purchased goods and/or

1  services from YOU, including the name(s), addresses, and email address(es) used
2  by each PERSON.

3  **RESPONSE:**

4      Luxy objects to this Interrogatory on the ground that it seeks information
5  that is not within the possession, custody, or control of Luxy: i.e., the identities of
6  persons who "have, at any time, been a member of any of the REFLEX
7  PLATFORMS." Luxy does not have the means to determine which of its users
8  "have, at any time, been a member of any of the REFLEX PLATFORMS."

9      In accordance with these objections, Luxy responds as follows:

10      Luxy is not aware of any such persons.

11  **INTERROGATORY NO. 11:**

12      Identify and describe in detail every trademark search LUXY has ever
13  conducted related to REFLEX and its trademarks.

14  **RESPONSE:**

15      Luxy objects to this Interrogatory to the extent it seeks disclosure of
16  information protected by the attorney-client privilege or work product doctrine.

17      Subject to this objection, Luxy responds as follows:

18      None.

19  **INTERROGATORY NO. 12:**

20      Identify every opinion, legal or otherwise, requested or received by LUXY
21  regarding the right to use all or any portion, including imitations or non-genuine
22  copies, of the TRADEMARKS in any form, including the identity of the
23  PERSONS requesting the opinion, the date and substance of the opinion, and the
24  PERSONS receiving the opinion.

25  **RESPONSE:**

26      Luxy objects to this Interrogatory to the extent it seeks disclosure of
27  information protected by the attorney-client privilege or work product doctrine.

28

Luxy further objects to this Interrogatory to the extent it concerns "any portion" of "the TRADEMARKS in any form," which would include every use in every context of, e.g., the generic words "carrot," "dating," "arrangement," and "millionaire"—on the ground that it seeks irrelevant information, would impose an undue burden and expense on Luxy, and is not proportional to the needs of the case.

In accordance with these objections, Luxy responds as follows:

Luxy has neither requested nor received any non-privileged opinions regarding the TRADEMARKS.

**INTERROGATORY NO. 13:**

Describe the degree of care YOU believe is exercised by consumers when deciding whether to purchase/subscribe to YOUR goods or services, including by explaining the basis for YOUR belief.

**RESPONSE:**

Luxy believes that consumers of its products and services exercise a high degree of care. As previously explained, Luxy's target market in the United States is sophisticated, elite, single, adults, who have executive jobs, own their own business, or are exceptional in their career, many of which earn at least $200,000 or more per year, who are seeking an equally sophisticated, elite, and successful match to be in a serious relationship with.  Such individuals tend to be highly educated and highly discerning, as those with such wealth are constantly faced with offers to purchase products and services in a variety of industries. With regard to Luxy's products and services in particular, they are generally priced higher than other subscription dating services, meaning potential users exercise a high degree of care before making purchasing decisions.

**INTERROGATORY NO. 14:**

Itemize, by dollar amount, LUXY'S revenues for each year since 2014 and YOUR expected revenue for 2021.

**RESPONSE:**

Luxy objects to this Interrogatory to the extent it seeks information from prior to January 1, 2016, which is not relevant to any claim or defense asserted in this action. Luxy also objects to this Interrogatory to the extent it seeks information concerning revenues from outside the United States, which is not relevant. Luxy further objects that this request is overbroad and calls for irrelevant information in that it seeks total revenues, as opposed to revenues from Luxy's alleged us of Plaintiffs' purported trademarks or copyrights.

In accordance with these objections, Luxy responds as follows:

Luxy has not generated any revenue or profits from its alleged use of any of Plaintiffs' purported trademarks or copyrights.

**INTERROGATORY NO. 15:**

Itemize, by dollar amount, LUXY'S profits for each year since 2014 and YOUR expected profit for 2021.

**RESPONSE:**

Luxy objects to this Interrogatory to the extent it seeks information from prior to January 1, 2016, which is not relevant to any claim or defense asserted in this action. Luxy also objects to this Interrogatory to the extent it seeks information concerning profits from outside the United States, which is not relevant. Luxy further objects that this request is overbroad and calls for irrelevant information in that it seeks total profits, as opposed to profits from Luxy's alleged us of Plaintiffs' purported trademarks or copyrights.

In accordance with these objections, Luxy responds as follows:

1   Luxy has not generated any revenue or profits from its alleged use of any of

2   Plaintiffs' purported trademarks or copyrights.

3   **INTERROGATORY NO. 16:**

4   Identify and describe all COMMUNICATIONS concerning REFLEX,

5   including (but not limited to) all discussions, plans, actions, and activities

6   regarding REFLEX, REFLEX's brands, the REFLEX PLATFORMS (REFLEX's

7   websites and mobile applications), and the TRADEMARKS.

8   **RESPONSE:**

9   Luxy objects to this Interrogatory to the extent it seeks disclosure of

10   information protected by the attorney-client privilege or work product doctrine.

11   Subject to this objection, Luxy responds that, pursuant to Federal Rule of

12   Civil Procedure 33(d), Luxy will conduct a search for COMMUNICATIONS

13   concerning REFLEX and will produce the same within a reasonable time after the

14   service of these responses.

15   **INTERROGATORY NO. 17:**

16   Identify and describe all YOUR current and future marketing plans,

17   including (but not limited to) any plans to expand into other markets and

18   goods/services.

19   **RESPONSE:**

20   Luxy objects to this Interrogatory to the extent it seeks information

21   concerning marketing plans or expansion outside the United States, which are not

22   relevant.

23   In accordance with this objection, Luxy responds as follows:

24   Luxy's current marketing plans include using primarily digital/online/search,

25   social media, earned media, and word-of-mouth marketing to target sophisticated,

26   elite, single, adults, who have executive jobs, own their own business, or are

27   exceptional in their career, many of which earn at least $200,000 or more per year,

28

DEFENDANT LUXY LIMITED'S RESPONSE TO REFLEX'S FIRST SET OF INTERROGATORIES
Case No. 2:20-cv-00423-RGK(KSx)

Exhibit 3
Page 042

19

1   who are seeking an equally sophisticated, elite, and successful match to be in a

2   serious relationship with.  Luxy's future plans are to continue doing this and adapt

3   as new social media platforms and other means of advertising emerge.  Luxy does

4   not plan to expand its services in the United States beyond its current target

5   market.

6   **INTERROGATORY NO. 18:**

7       Identify all persons that furnished information for the response to all

8   discovery requests propounded on YOU by REFLEX and designating the number

9   of each request for which such persons furnished information.

10  **RESPONSE:**

11      Luxy objects to this Interrogatory to the extent it seeks disclosure of

12  information protected by the attorney-client privilege or work product doctrine.

13      In accordance with this objection, Luxy states as follows:

14      Ting Yong Tang provided information as to all of Luxy's discovery

15  responses.

16  **INTERROGATORY NO. 19:**

17      Identify and describe in detail all reasons that YOU allege that each of the

18  TRADEMARKS are generic, including identifying all documents that YOU

19  believe support YOUR allegations.

20  **RESPONSE:**

21      Luxy objects to this Interrogatory to the extent it seeks disclosure of

22  information protected by the attorney-client privilege or work product doctrine.

23  Luxy objects to this Interrogatory on the ground that discovery is ongoing, and

24  Luxy expects to collect documents from Plaintiffs' and other sources in the coming

25  months bearing on the genericness of the TRADEMARKS. In addition, Luxy

26  objects to this Interrogatory to the extent it requires Luxy to identify "all

27  documents" supporting Luxy's contention, on the ground that it would impose an

28

undue burden and expense on Luxy and is not proportional to the needs of the case. To the extent Plaintiffs' seek an exhaustive list of all documents supporting Luxy's contentions, the pre-trial order is the proper vehicle for such a list, and requiring Luxy to provide and then constantly update such a list in connection with this Interrogatory is disproportional to the needs of the case.

In accordance with these objections, Luxy responds as follows:

Plaintiffs' purported trademarks are generic because the primary significance of the marks to the relevant public has become the generic name of goods or services on or in connection with which the marks have been used. Luxy further refers Plaintiffs to paragraphs 12 through 43 of Luxy's First Amended Counterclaims, including Exhibits C and D thereto, which contain numerous examples of third parties using Plaintiffs' purported marks generically as well as Plaintiffs' owner/CEO doing so. Pursuant to Federal Rule of Civil Procedure 33(d), Luxy will also produce documents evidencing the genericness of Plaintiffs' marks.

Dated:  July 15, 2021                    Respectfully submitted,


By:    */s/ Kollin J. Zimmermann*
       KOLLIN J. ZIMMERMANN
       CAMDEN A. MINERVINO
       BEATRICE O. STRNAD
       Attorneys for Defendant and
       Counterclaimant
       LUXY LIMITED

## VERIFICATION

I, Ting Yong Tang, am duly authorized to verify the interrogatory responses contained in the foregoing **DEFENDANT LUXY LIMITED'S RESPONSE TO PLAINTIFF REFLEY MEDIA'S FIRST SET OF INTERROGATORIES** (the "Responses") on behalf Defendant/Counterclaimant Luxy Limited ("Luxy"). I have read the foregoing Responses, which were prepared with the assistance and advice of others. The Responses are based on the records and information within Luxy's possession, custody, or control, to the extent such records and information have thus far been discovered after a reasonable investigation. Subject to these limitations, the Responses are true to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: July 15, 2021

Ting Yong Tang

15694

Exhibit 3
Page 045

1

**PROOF OF SERVICE**

2

I, Adriana Moreno, declare:

3

I am employed in the City and County of Los Angeles, California; I am over the age of eighteen years and not a party to the within action; my business address is 1801 Century Park East, Suite 2300, Los Angeles, CA 90067.

4

5

On the date set forth below, I served a true and accurate copy of the foregoing document entitled **DEFENDANT LUXY LIMITED'S RESPONSE TO PLAINTIFF REFLEX MEDIA'S FIRST SET OF INTERROGATORIES** on the parties in this action by as follows:

6

7

Attorneys for Reflex Media, Inc. and Clover8 Investments Pte., Ltd.:

8

Mark L. Smith (*msmith@smithwashburn.com*)
Jacob L. Fonnesbeck (*jfonnesbeck@smithwashburn.com*)
SMITH WASHBURN, LLP
500 South Grand Avenue, Suite 1450
Los Angeles, CA 90071
Telephone: (213) 418-2390
Facsimile: (213) 418-2399

9

10

11

12

13

☒   [By E-Mail]  I caused said document to be sent by electronic transmission to the e-mail addresses indicated for the parties listed above.

14

15

☐   [By First Class Mail]  I am readily familiar with my employer's practice for collecting and processing documents for mailing with the United States Postal Service.  On the date listed herein, following ordinary business practice, I served the foregoing document at my place of business, by placing true copies thereof, enclosed in sealed envelopes, with first class postage thereon fully prepaid, for collection and mailing with the United States Postal Service where they would be deposited with the United States Postal Service that same day in the ordinary course of business.

16

17

18

19

☐   [By Overnight Courier]  I caused each envelope to be delivered by a commercial carrier service for overnight delivery to the offices of the addressees.

20

21

☐   [By Hand]  I directed each envelope to the parties so designated on the service list to be delivered by courier this date.

22

23

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on July 15, 2021, at Los Angeles, California.

24

25

*/s/ Adriana Moreno*

26

Adriana Moreno

27

28

69763827v.2

22

Exhibit 3
Page 046